

RECEIVED
JUN 0 3 2021
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-CR-261-DSD/TNL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **INFORMATION** |
| Plaintiff, | ) | |
| | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| v. | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| ADITYA RAJ SHARMA, | ) | |
| | ) | |
| Defendant. | ) | |

The ACTING UNITED STATES ATTORNEY charges:

## General Allegations

At times material to this Information:

1. From at least in or about April 2020 through in or about November 2020, the defendant, ADITYA RAJ SHARMA, capitalized on the COVID-19 pandemic to exploit emergency funding for needy, eligible small businesses by knowingly submitting sixteen false and fraudulent applications to receive loan proceeds defendant SHARMA knew he was not entitled to receive. Defendant SHARMA used false and fraudulent pretenses, representations, promises, and concealment of material facts to apply for at least $9,619,046.46 in such loans from ten different lenders, of which defendant SHARMA obtained and misappropriated $1,773,600 in fraud proceeds.

### *The Defendant and Related Entities*

2. Defendant ADITYA RAJ SHARMA was a resident of Maple Grove, in the State and District of Minnesota.



SCANNED
JUN 0 3 2021
U.S. DISTRICT COURT MPLS

3. Crosscode Inc. ("Crosscode") was a cloud-based software development company registered in Delaware, originally headquartered in Maple Grove, Minnesota, and subsequently headquartered in Foster City, California. Defendant SHARMA founded Crosscode in 2015, and thereafter held various positions including Chief Executive Officer and President. On or about November 13, 2019, defendant SHARMA was notified that—effective immediately—Crosscode's board of directors had removed him as an officer of Crosscode and terminated his employment for cause. Defendant SHARMA also knew that he was not the 100% shareholder of Crosscode's shares.

4. Kloudgaze Inc. ("Kloudgaze") was a company that claimed to design cloud-computing technology, which defendant SHARMA created and registered in Delaware on or about May 18, 2020. Defendant SHARMA was Kloudgaze's president and chief executive officer.

5. Through at least July 2020, defendant SHARMA did not report the payment of any wages to a single Kloudgaze employee.

6. At no point did defendant SHARMA's former company, Crosscode, do business under the name Kloudgaze.

7. Neoforma LLC ("Neoforma") was a company that claimed to engage in computer systems design and related services, which defendant SHARMA created and registered in Minnesota on or about July 8, 2020. Neoforma was an apparent start-up company without any active employees beyond SHARMA as its founder.

Through at least August 2020, defendant SHARMA did not report the payment of any wages to a single Neoforma employee.

8. Mokume LLC ("Mokume") was a company that claimed to develop computer software, which defendant SHARMA created and registered in Minnesota on or about July 16, 2020. Defendant SHARMA was Mokume's president and chief executive officer. Mokume was an apparent start-up company without any active employees beyond SHARMA as its founder. Through at least August 2020, defendant SHARMA did not report the payment of any wages to a single Mokume employee.

### *The U.S. Small Business Administration*

9. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

10. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### *CARES Act, Paycheck Protection Program, and Relief Funding*

11. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the

authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

12. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to certify, among other things: (a) that the small business was in operation on February 15, 2020; (b) average monthly payroll expenses; and (c) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

13. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

4

14. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

## THE SCHEME TO DEFRAUD

15. From at least April 2020 through at least in or around November 2020, in the District of Minnesota, and elsewhere, the defendant,

**ADITYA RAJ SHARMA,**

did knowingly and intentionally devise and execute a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

16. It was part of the scheme to defraud that from at least in or about April 2020 through at least in or about August 2020, defendant SHARMA knowingly applied for sixteen PPP loans by submitting knowingly false and fraudulent applications to numerous lenders. Every application defendant SHARMA submitted included knowingly false representations and material omissions. The purpose of the scheme was for defendant SHARMA to unjustly enrich himself by obtaining PPP loan proceeds under false and fraudulent pretenses, including by submitting fabricated supporting records, making false statements about the number of employees he had

5

and the amount of payroll expenses he incurred, and making false statements about the relevant corporate entities and intended use of the loan proceeds.

17. It was further part of the scheme that defendant SHARMA applied for at least fifteen PPP loans after receiving the proceeds from his first PPP application. This included one application that defendant SHARMA knowingly submitted in the name of his spouse without her knowledge or approval. Defendant SHARMA applied for these additional loans despite PPP requirements, which defendant SHARMA initialed and certified on every application he submitted, that the applicant "has not and will not receive another loan under the Paycheck Protection Program" for the period of February 15, 2020, through December 31, 2020.

18. More specifically, in furtherance of the scheme, between in or about April and July 2020, defendant SHARMA submitted three false and misleading PPP applications—one for Crosscode Inc., dba Kloudgaze; one for Kloudgaze, Inc.; and one for Mokume, LLC—seeking a total of $1,773,600 in PPP funds. Defendant SHARMA submitted these applications with numerous knowingly false representations, examples of which include the following:

- Misrepresenting information to qualify under PPP loan requirements, such as corporate details and dates of incorporation to make it appear as though defendant SHARMA's entities—Kloudgaze, Neoforma, and Mokume—had been operational as of February 15, 2020, and thus potentially eligible for PPP funding when, in fact, these were entities

that defendant SHARMA created after the PPP funding was authorized by law;

- Concealing from lenders that SHARMA had previously applied for or received other PPP funding in order to stave off lenders' inquiries and to enable defendant SHARMA to unlawfully "double dip" into PPP funds by receiving a PPP loan for $474,900 for Kloudgaze on July 16, 2020, and receiving another PPP loan for $736,200 for Mokume on July 26, 2020, even though defendant SHARMA had already received a PPP loan for $562,500 on April 29, 2020;

- Falsifying the number of active employees on payroll and including knowingly bogus monthly payroll figures to deceive lenders about the eligibility of defendant SHARMA's businesses; and

- Submitting knowingly falsified supporting documentation, such as forged tax return documents or bogus bank account statements that defendant SHARMA created.

19. As a direct result of defendant SHARMA'S material falsehoods and omissions, between April and July 2020, lenders approved these PPP applications and deposited $1,773,600 in PPP funds into bank accounts that defendant SHARMA opened and controlled. Thereafter, defendant SHARMA transferred this money to various other bank accounts that he controlled or could access for the purpose of converting the money to his own purposes.

20. In total, defendant SHARMA submitted thirteen PPP applications that ultimately were not funded—one for Crosscode, six for Kloudgaze, four for Neoforma, and two for Mokume. Each of these 13 additional applications contained false information, fabricated supporting documents, or both. In total, the 13 additional applications sought $7,845,446.46 in PPP funds.

21. In total, as a result and in furtherance of his scheme to defraud, defendant SHARMA received approximately $1,773,600 in fraud proceeds, some of which he distributed and misappropriated, or attempted to distribute and misappropriate, for the personal benefit of himself and other parties in violation of PPP requirements. Rather than use PPP funds for permissible business expenses, defendant SHARMA instead transferred at least $900,000 to personal bank accounts that he controlled and for his personal use. More specifically, defendant SHARMA used his fraud proceeds to: (a) cover approximately $260,226 in unrelated legal debts; (b) pay for home improvements including the installation of a $64,300 pool in defendant SHARMA's backyard and landscaping projects totaling $24,600; (c) transfer approximately $14,000 to a financial account in India; and (d) otherwise finance new business ventures using PPP funds.

## COUNT 1
(Wire Fraud)

22. Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

23. On or about the date set forth below, in the State and District of Minnesota and elsewhere, the defendant,

ADITYA RAJ SHARMA,

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds, as described below:

| Count | Date of Wire (on or about) | Wire |
|---|---|---|
| 1 | April 26, 2020 | Electronic submission by defendant from Minnesota of an application for a $562,500 PPP loan, which was routed interstate through servers located outside of Minnesota. |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

25. Count 1 of this Information is incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c).

26. Upon conviction of any of the offenses alleged in Count 1, as set forth in this Information, defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the violation, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), including but not limited to:

    a. $331,300 in funds seized from Old National Bank account x1176 in the name of Mokume, LLC;

    b. $245,138.49 in funds seized from Wells Fargo Bank account x8780 in the name of Kloudgaze, Inc.;

  c.  $85,594.94 in funds seized from Old National Bank account x6720 in the name of Kloudgaze, Inc.; and

  d.  $12,947.33 in funds seized from US Bank account x6963 in the name of defendant SHARMA.

27. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Dated: June 1, 2021          W. ANDERS FOLK
                    Acting United States Attorney

              BY: MATTHEW S. EBERT
                  Assistant United States Attorney
                  Attorney ID No. 0386655
                  JORDAN L. SING
                  Assistant United States Attorney
                  Attorney ID No. 0393084