UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-CR-261 (DSD/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **PLEA AGREEMENT AND** |
| v. ) | **SENTENCING STIPULATIONS** |
| ) | |
| ADITYA RAJ SHARMA, ) | |
| ) | |
| Defendant. ) | |

The United States of America and defendant Aditya Raj Sharma ("defendant"), and his attorney, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, agree to resolve this case on the terms and conditions that follow. This Plea Agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This Plea Agreement does not bind any other United States Attorney's Office or any other federal or state agency. The parties to this Agreement have agreed upon the following:

### Charges in This Case

1. By this Agreement, defendant agrees to plead guilty to Count 1 of the Information, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343. Defendant understands that he is resolving only the matter set forth in the Information and in the Factual Basis herein, and that this Plea Agreement does not resolve any other matter for which Defendant might be under investigation.

2. Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Factual Basis

4. Defendant is pleading guilty because he is in fact guilty of Count 1 of the Information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From at least April 2020 through at least in or around November 2020, in the District of Minnesota, defendant did knowingly and intentionally devise and execute a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts. Specifically, defendant capitalized on the COVID-19 pandemic to exploit emergency funding for needy, eligible small businesses by knowingly submitting sixteen false and fraudulent applications to receive loan proceeds defendant knew he was not entitled to receive. Defendant fraudulently applied for at least $9,619,046.46 in such loans from ten different lenders, of which defendant obtained and misappropriated $1,773,600 in fraud proceeds.

### *The Defendant and Related Entities*

Defendant was a resident of Maple Grove, in the State and District of Minnesota. Crosscode, a cloud-based software development company originally headquartered in Maple Grove, Minnesota, was founded by defendant in 2015. After defendant subsequently held various positions at Crosscode, including Chief

Executive Officer and President, he was notified on or about November 13, 2019, that—effective immediately—Crosscode's board of directors had removed him as an officer of Crosscode and terminated his employment for cause. Defendant also knew that he was not the 100% shareholder of Crosscode's shares.

Kloudgaze Inc. ("Kloudgaze") was a company that claimed to design cloud-computing technology, which defendant created and registered in Delaware on or about May 18, 2020. Defendant was Kloudgaze's president and chief executive officer. Through at least July 2020, defendant did not report the payment of any wages to a single Kloudgaze employee. At no point did defendant's former company, Crosscode, do business under the name Kloudgaze.

Neoforma LLC ("Neoforma") was a company that claimed to engage in computer systems design and related services, which defendant created and registered in Minnesota on or about July 8, 2020. Neoforma was an apparent start-up company without any active employees beyond defendant as its founder. Through at least August 2020, defendant did not report the payment of any wages to a single Neoforma employee.

Mokume LLC ("Mokume") was a company that claimed to develop computer software, which defendant created and registered in Minnesota on or about July 16, 2020. Defendant was Mokume's president and chief executive officer. Mokume was an apparent start-up company without any active employees beyond defendant as its founder. Through at least August 2020, defendant did not report the payment of any wages to a single Mokume employee.

*The U.S. Small Business Administration*

The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

*CARES Act, Paycheck Protection Program, and Relief Funding*

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to certify,

among other things: (a) that the small business was in operation on February 15, 2020; (b) average monthly payroll expenses; and (c) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

### The Scheme to Defraud

From at least in or about April 2020 through at least in or about August 2020, defendant knowingly applied for sixteen PPP loans by submitting knowingly false and fraudulent applications to numerous lenders. Every application defendant submitted included knowingly false representations and material omissions. The purpose of the scheme was for defendant to unjustly enrich himself, or his other

5

businesses, by obtaining PPP loan proceeds under false and fraudulent pretenses, including by submitting fabricated supporting records, making false statements about the number of employees he had and the amount of payroll expenses he incurred, and making false statements about the relevant corporate entities and intended use of the loan proceeds.

As part of his scheme, defendant applied for at least fifteen PPP loans after receiving the proceeds from his first PPP application. This included one application that defendant knowingly submitted in the name of his spouse without her knowledge or approval. Defendant applied for these additional loans despite PPP requirements, which defendant initialed and certified on every application he submitted, that the applicant "has not and will not receive another loan under the Paycheck Protection Program" for the period of February 15, 2020, through December 31, 2020.

More specifically, in furtherance of the scheme, between in or about April and July 2020, defendant submitted three false and misleading PPP applications—one for Crosscode Inc., dba Kloudgaze; one for Kloudgaze, Inc.; and one for Mokume, LLC—seeking a total of $1,773,600 in PPP funds. For example, as alleged in Count One of the Information, defendant electronically submitted from Minnesota a fraudulent application for a $562,500 PPP loan, which was routed interstate through servers located outside of Minnesota.

Defendant submitted these applications with numerous knowingly false representations, examples of which include the following:

- Misrepresenting information to qualify under PPP loan requirements, such as corporate details and dates of incorporation to make it appear

as though defendant's entities—Kloudgaze, Neoforma, and Mokume—had been operational as of February 15, 2020, and thus potentially eligible for PPP funding when, in fact, these were entities that defendant created after the PPP funding was authorized by law;

- Concealing from lenders that defendant had previously applied for or received other PPP funding in order to stave off lenders' inquiries and to enable defendant SHARMA to unlawfully "double dip" into PPP funds by receiving a PPP loan for $474,900 for Kloudgaze on July 16, 2020, and receiving another PPP loan for $736,200 for Mokume on July 26, 2020, even though defendant had already received a PPP loan for $562,500 on April 29, 2020;

- Falsifying the number of active employees on payroll and including knowingly bogus monthly payroll figures to deceive lenders about the eligibility of defendant's businesses; and

- Submitting knowingly falsified supporting documentation, such as forged tax return documents or bogus bank account statements that defendant created.

As a direct result of defendant's material falsehoods and omissions, between April and July 2020, lenders approved three of defendant's PPP applications and deposited $1,773,600 in PPP funds into bank accounts that defendant opened and controlled. Thereafter, defendant transferred this money to various other bank accounts that he controlled or could access for the purpose of converting the money to his own purposes.

In total, defendant submitted thirteen PPP applications that ultimately were not funded—one for Crosscode, six for Kloudgaze, four for Neoforma, and two for Mokume. Each of these 13 additional applications contained false information, fabricated supporting documents, or both. In total, the 13 additional applications sought $7,845,446.46 in PPP funds.

As a result and in furtherance of his scheme to defraud, defendant received approximately $1,773,600 in fraud proceeds, some of which he distributed and misappropriated, or attempted to distribute and misappropriate, for the personal benefit of himself and other parties in violation of PPP requirements. Rather than use PPP funds for permissible business expenses, defendant instead transferred at least $900,000 to personal bank accounts that he controlled and for his personal use. More specifically, defendant used his fraud proceeds to: (a) cover approximately $260,226 in unrelated legal debts; (b) pay for home improvements including the installation of a $64,300 pool in defendant's backyard and landscaping projects totaling $24,600; (c) transfer approximately $14,000 to a financial account in India; and (d) otherwise finance new business ventures using PPP funds.

## Maximum Statutory Penalties

5. Defendant understands that Count 1 of the Information carries the following maximum statutory penalties:

    a. 20 years in prison;
    b. supervised release term of 3 years;
    c. fine of $250,000, or twice the gross gain or loss from the offense, whichever is greater;
    d. mandatory special assessment of $100; and
    e. payment of mandatory restitution in an amount to be determined by the Court.

## Guidelines Calculations

6. The parties acknowledge that defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this Plea Agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at

sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations:

    a.     <u>Base Offense Level</u>. The parties agree that the base offense level for wire fraud is 7. (U.S.S.G. § 2B1.1(a)(1)).

    b.     <u>Specific Offense Characteristics (Loss)</u>. The government believes that the offense level should be increased by 20 levels because the intended loss ($9,619,046.46) is more than $9,500,000, but not more than $25,000,000. (U.S.S.G. § 2B1.1(b)(1)(K)). Defendant reserves the right to argue that the offense level should be increased by 16 levels because the actual loss ($1,773,600) is more than $1,500,000, but not more than $3,500,000. (U.S.S.G. § 2B1.1(b)(1)(I)).

    c.     <u>Specific Offense Characteristics (Sophisticated Means)</u>. The parties agree that the offense level should be increased by 2 levels because the offense involved sophisticated means. (U.S.S.G. § 2B1.1(b)(10)(C). The parties agree that no other specific offense characteristics apply

    d.     <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) defendant testifies truthfully during the change of plea and sentencing hearings; (2) defendant cooperates fully with the United States Probation Office in the pre-sentence investigation; and (3) defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing. The parties agree that no other Chapter 3 adjustments apply.

    e.     <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, defendant will fall into Criminal History Category I. This does not constitute a stipulation, but a belief based on an

assessment of the information currently known. Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. Defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

  f. <u>Anticipated Guidelines Range</u>. With an adjusted offense level of **26**, and a criminal history category of **I**, the Sentencing Guidelines range is **63-78 months of imprisonment**, whereas, with an adjusted offense level of **22**, and a criminal history category of **I**, the Sentencing Guidelines range is **41-51 months of imprisonment**, in addition to any supervised release, fine, and restitution the Court may impose.

  g. <u>Fine Range</u>. With an adjusted offense level of 26, the fine range is $25,000 to $250,000, and with an adjusted offense level of 22, the fine range is $15,000 to $150,000. (U.S.S.G. § 5E1.2(c)(3)).

  h. <u>Sentencing Recommendation, Departures, and Variances</u>. The parties reserve the right to make a motion for departures and/or variances from the applicable Guidelines range and to oppose any such motion(s) made by the opposing party. The parties also reserve the right to argue for a sentence outside the applicable guideline range.

7. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are

different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

8. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100.00 for the felony count to which the defendant is convicted. U.S.S.G. § 5E1.3. Defendant agrees the $100.00 special assessment is due and payable at the time of sentencing.

9. **Restitution and Disclosure of Assets.** Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crimes. The parties further agree that the amount of restitution owed to lenders is at least $1,773,600.

10. Defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business controlled by the defendant. Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court. More specifically, two weeks after the change of plea, defendant agrees to provide to the United States, under penalty of perjury, a financial disclosure form listing all defendant's assets and financial interests valued at more than $1,000 before the date of sentencing. Defendant agrees to provide updates with any material changes in circumstances, as described in 18

U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. Defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, defendant agrees to submit to one or more asset interviews or depositions under oath.

11. **Revocation of Supervised Release.** Defendant understands that if he were to violate any condition of supervised release, defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583(k).

## Waiver of Rights

12. **Waiver of Right to be Charged by Indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Plea Agreement, defendant agrees to sign an indictment waiver and knowingly waives his right to be prosecuted by indictment in this case and to assert at trial or on appeal any defects arising from the information, the information process, or the fact that he has been prosecuted by way of an information in this case.

13. **Waiver of Pretrial Motions.** Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of this Plea

Agreement, and based upon the concessions of the United States within this Plea Agreement, defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case and agrees to withdraw and not pursue any motions previously filed.

14. **Waiver of Trial Right.** Defendant understands that he has the right to persist in a plea of not guilty to the charges against him in this case, and if he does, he would have the right to a public and speedy trial. Defendant understands that by pleading guilty he surrenders this right.

15. **Waivers of Appeal and Collateral Attack.** Defendant understands that 18 U.S.C. § 3742 affords defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this Plea Agreement, defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal defendant's sentence, including the amount of restitution, unless the Court imposes a sentence of imprisonment exceeding 78 months. The United States also waives its right to seek appellate review of any sentence of imprisonment imposed by the District Court on any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment is 41 months or more. In addition, defendant expressly waives the right to petition under 28 U.S.C. § 2255. However, the waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel. Defendant has discussed these rights with the defendant's attorney. Defendant

understands the rights being waived, and defendant waives these rights knowingly, intelligently, and voluntarily.

16. **Forfeiture.** Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme charged in Count 1 of the Information.

17. Defendant agrees that the specific property subject to forfeiture in Count 1 of the Information includes but is not limited to:

    a. $331,300 in funds seized from Old National Bank account x1176 in the name of Mokume, LLC;

    b. $245,138.49 in funds seized from Wells Fargo Bank account x8780 in the name of Kloudgaze, Inc.;

    c. $85,594.94 in funds seized from Old National Bank account x6720 in the name of Kloudgaze, Inc.; and

    d. $12,947.33 in funds seized from US Bank account x6963 in the name of defendant SHARMA.

(collectively, "the Seized Funds").

18. Defendant admits that the Seized Funds are subject to forfeiture because they constitute or are traceable to the wire fraud scheme alleged in Count 1 of the Information. Defendant consents to entry of a forfeiture money judgment in the amount of $1,773,600.00 and agrees that the amount of proceeds he obtained as a result of the wire fraud scheme alleged in Count 1 of the Information equals or exceeds this amount.

19. The United States reserves its right to seek a forfeiture money judgment, to forfeit substitute assets, and to forfeit additional directly forfeitable property. Defendant will receive a credit against this money judgment for the net value of all assets that are forfeited from him in connection with this matter.

20. Defendant agrees that the United States may, at its option, forfeit the Seized Funds through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. Defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent defendant has sought remission or otherwise challenged the forfeiture of the above-described property, he withdraws any such challenges.

21. Defendant further agrees that he will not assist any third parties with regard to any claims or petitions that third parties might file in subsequent administrative or judicial forfeiture proceedings for the Seized Funds.

22. Defendant understands that forfeiture of the Seized Funds shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office for the District of Minnesota ("USAO-MN") agrees to take the appropriate steps to recommend to the Money Laundering and Asset Recovery Section of the Department of Justice ("MLARS") that

the net proceeds derived from any forfeited assets be applied to the Defendant's restitution judgment pursuant to 19 U.S.C. § 981(e), 28 C.F.R. Pt. 9, and other applicable law. Defendant acknowledges that the USAO-MN only has authority to recommend such relief in accordance with applicable regulations, and that the final decision of whether to grant relief rests with the Chief of MLARS, who will make a decision in accordance with applicable law, and that the USAO-MN's recommendation does not guarantee that such request will be approved.

23. **FOIA Requests.** Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

## Conclusion

24. This is the entire agreement and understanding between the United States and defendant.

25. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

26. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts every term and condition of this Plea Agreement.

Date: 7/28/2021

W. ANDERS FOLK
Acting United States Attorney

BY: _____
MATTHEW S. EBERT
JORDAN L. SING
Assistant United States Attorneys

Date: 7/28/2021

_____
ADITYA RAJ SHARMA
Defendant

Date: 7/28/21

_____
RYAN P. GARRY
ELIZABETH R. DUEL
ANDREW S. BIRRELL
Attorneys for Defendant

17