<pre>
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
      ------------------------------------------------------------
 3                                )
      United States of America,   )   File No. 20-cr-261
 4                                )               (DSD/TNL)
              Plaintiff,          )
 5                                )
      v.                          )
 6                                )   Courtroom 14W
      Aditya Raj Sharma,          )   Minneapolis, Minnesota
 7                                )   Wednesday, July 28, 2021
              Defendant.          )   10:13 a.m.
 8                                )
      ------------------------------------------------------------
 9
                  BEFORE THE HONORABLE DAVID S. DOTY
10             UNITED STATES DISTRICT COURT SENIOR JUDGE
                      CHANGE OF PLEA HEARING
11
      APPEARANCES
12     For the Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                                 BY:  MATTHEW S. EBERT
13                               600 United States Courthouse
                                 300 South Fourth Street
14                               Minneapolis, Minnesota 55415

15
       For the Defendant:        RYAN GARRY, ATTORNEY, LLC
16                               BY:  RYAN PATRICK GARRY
                                 333 South Seventh Street, #2350
17                               Minneapolis, Minnesota 55402

18
       Court Reporter:           RENEE A. ROGGE, RMR-CRR
19                               United States Courthouse
                                 300 South Fourth St., Box 1005
20                               Minneapolis, Minnesota 55415

21

22        Proceedings recorded by mechanical stenography;
      transcript produced by computer.
23
                              *   *   *
24

25
</pre>

1          **P R O C E E D I N G S**

2                **IN OPEN COURT**

3          THE COURT:  Good morning.  Do you want to take

4    your seats, please?

5          This morning we have on our calendar that matter

6    of the United States versus Aditya Raj Sharma.

7          May I have appearances, please?

8          MR. EBERT:  Good morning, Your Honor.  Matthew

9    Ebert on behalf of the United States.

10          THE COURT:  Good morning.

11          MR. GARRY:  Good morning, Your Honor.  Ryan Garry

12    on behalf of --

13          THE COURT:  Do you want to turn on your mics, so I

14    can hear you?  Thank you.

15          MR. GARRY:  Thank you.  Good morning, Your Honor.

16    Ryan Garry on behalf of Mr. Sharma.  I apologize for the

17    delays this morning.  I was mistakenly into the St. Paul

18    courthouse.  Thank you.

19          THE COURT:  Well, and, of course, COVID-itus gives

20    us reason for doing all kinds of odd things these days.  I

21    blame COVID-itus for many things, so we'll plug that in.

22          MR. GARRY:  Well, I appreciate that, Your Honor.

23    Thank you.

24          THE COURT:  You can take your seats, except for

25    you, Mr. Sharma.  If you want to raise your right hand,

1    please.  Do you swear that the information you are about to

2    give in the proceeding before this court will be the truth,

3    the whole truth and nothing but the truth, so help you God?

4              THE DEFENDANT:  I do, Your Honor.

5              THE COURT:  You can take your -- you can put your

6    hand down, and you can take your seat.  The reason I just

7    swore you in is because you are going to be asked a number

8    of questions this morning, and I want to make sure you give

9    truthful and honest answers to those questions.  If you do

10   not, it's another offense called perjury.  Do you understand

11   that?

12             THE DEFENDANT:  I do, Your Honor.

13             THE COURT:  Now that you've been sworn.  Okay.

14             Mr. Ebert, why don't you go ahead, if you would.

15             And if you would, gentlemen, you can take off your

16   masks when you speak so that we all can hear and the court

17   reporter can hear and understand you, which is very

18   important.

19             Okay.  Go ahead.

20             MR. EBERT:  Thank you, Your Honor.  And is it all

21   right if I remain seated while I'm doing --

22             THE COURT:  Let's do that today, because when we

23   have motions now we're having people come to the podium, but

24   that's a little different.  So why don't you just remain

25   seated, like state court, you know.  I hate to revert back

1    that far, but that's how they do it over there, you know.  I

2    don't know if you know that.  They forbid you to stand.  You

3    know, the judge gets angry if you stand.  But, anyway, have

4    a seat.

5            MR. EBERT:  Well, I don't want to make the court

6    angry.

7            THE COURT:  No, no, no.  I'm not going to get

8    angry about much of anything this morning, but just go

9    ahead, please.

10           MR. EBERT:  All right.  Thank you, Your Honor.

11           Good morning, Mr. Sharma.

12           THE DEFENDANT:  Good morning, Mr. Ebert.

13           MR. EBERT:  So, Mr. Sharma, I want to just point

14   out a few things procedurally that will happen today.  Okay?

15           THE DEFENDANT:  Sure.

16           MR. EBERT:  So I'm going to ask you a series of

17   questions to start off, and after that I anticipate that the

18   court will ask you some questions as well.  In general, the

19   purpose is to make sure, first, that you have the ability,

20   the capacity to understand today's proceedings and to

21   participate in them, that you understand various terms that

22   are in the plea agreement and that you understand various

23   rights that you have and that you're waiving those rights

24   knowingly and to go through other provisions that are in the

25   plea agreement, as well as the facts of this case, the

1    factual basis.

2              First of all, you and I have met before.

3              THE DEFENDANT:  Yes.

4              MR. EBERT:  Is that right?  And I know from our

5    meeting that you have an issue with hearing in one of your

6    ears; is that right?

7              THE DEFENDANT:  That is correct.

8              MR. EBERT:  Are you able to hear me so far?

9              THE DEFENDANT:  No, I'm -- I'm able to hear you

10   perfectly well.

11             MR. EBERT:  At any point today if you cannot hear

12   anyone, will you let us know?

13             THE DEFENDANT:  Sure.

14             MR. EBERT:  And if at any point today you don't

15   understand or you wish to speak to your attorney, also will

16   you please let us know so that the proceedings can stop?

17             THE DEFENDANT:  Sure.

18             MR. EBERT:  So, first of all, in terms of your

19   ability today, Mr. Sharma, have you had any drugs or alcohol

20   within the last 24 hours?

21             THE DEFENDANT:  No.

22             MR. EBERT:  Are you taking any medications

23   currently?

24             THE DEFENDANT:  I do.

25             MR. EBERT:  What medications are you taking, sir?

1           THE DEFENDANT:  I take medications for diabetes,

2     cholesterol, hypertension and anxiety.

3           MR. EBERT:  And, generally, how long have you been

4     taking the medications for those conditions?

5           THE DEFENDANT:  You know, I cannot exactly tell

6     you how long.  Rough estimate, it's been about seven,

7     eight years now.

8           MR. EBERT:  Okay.  And as we sit here today, is

9     there anything about those medications that makes it so that

10    you cannot think clearly?

11          THE DEFENDANT:  Should not be.

12          MR. EBERT:  Is there anything about those

13    medications that's causing you to not understand what's

14    happening here today?

15          THE DEFENDANT:  No, no.

16          MR. EBERT:  Okay.  Are you under the care of any

17    type of physician currently?

18          THE DEFENDANT:  Yes, I am.

19          MR. EBERT:  Okay.  What type of physician?

20          THE DEFENDANT:  A family medicine practitioner.

21          MR. EBERT:  Okay.

22          THE DEFENDANT:  And -- well, it's still undecided.

23    I might be struggling with cancer.  I'm not sure of that.

24    So some early symptoms have been detected, so I'm going

25    through some tests currently.

 1          MR. EBERT:  In general, with everything you've

 2     described so far, is there anything about your physical

 3     condition or your mental condition that prevents you from

 4     thinking clearly and understanding today's proceedings?

 5          THE DEFENDANT:  No.

 6          MR. EBERT:  Is it fair to say you are of a clear

 7     and a sound mind this morning?

 8          THE DEFENDANT:  Absolutely.

 9          MR. EBERT:  In terms of your attorney in this

10     case, and I should say your attorneys in this case, have you

11     had sufficient time to meet with your attorneys about this

12     matter?

13          THE DEFENDANT:  Yes, I have.

14          MR. EBERT:  And have you had an opportunity to go

15     through the charges in this case with your attorneys?

16          THE DEFENDANT:  Yes, I have.

17          MR. EBERT:  Likewise, have you had an opportunity

18     to go through the plea agreement with your attorneys?

19          THE DEFENDANT:  Yes, I have.

20          MR. EBERT:  And without going into any details of

21     what you discussed, have you had the ability to have your

22     various concerns and questions addressed by your attorneys?

23          THE DEFENDANT:  Yes.

24          MR. EBERT:  And are you generally satisfied with

25     your representation?

1         THE DEFENDANT:  Yes, absolutely.

2         MR. EBERT:  Okay.  Next I want to turn to the plea

3    agreement and the charges themselves.  And, Mr. Sharma, you

4    have in front of you a copy of the plea agreement; is that

5    right?

6         THE DEFENDANT:  That's correct.

7         MR. EBERT:  Okay.  And you should also have I

8    believe a copy of the information as well?

9         THE DEFENDANT:  Yes, I do.

10         MR. EBERT:  Okay.  And do you understand that

11    today's proceeding is a plea hearing concerning a charge

12    against you in federal court?

13         THE DEFENDANT:  Mm-hmm.

14         MR. EBERT:  And then for purposes of the court

15    reporter, we will all need to make sure we are giving an out

16    loud "yes" or "no."  Can you do that?

17         THE DEFENDANT:  Yes, please.  Sorry.

18         MR. EBERT:  Okay.  So, again, do you understand

19    that we are here today on a plea hearing concerning a

20    pending federal charge against you?

21         THE DEFENDANT:  Yes.

22         MR. EBERT:  And, specifically, do you understand

23    that you have been charged with wire fraud as set forth in

24    the information that was filed on June 3rd of this year?

25         THE DEFENDANT:  Yes.

1          MR. EBERT:  And that the wire fraud charge that

2     you face is specifically that on or about April 26th of

3     2020, that in the State and District of Minnesota, that for

4     the purposes of executing and attempting to execute a scheme

5     to defraud, that you knowingly transmitted and caused the

6     transmission of a particular wire communication or wire

7     signal in interstate or foreign commerce and that

8     specifically this was the submission from Minnesota of an

9     application for a so-called PPP loan in the amount of

10    $562,500?

11          THE DEFENDANT:  Yes.

12          MR. EBERT:  And, of course, the other details of

13    that scheme are set forth in the information, which you have

14    read; is that correct?

15          THE DEFENDANT:  Yes.

16          MR. EBERT:  Okay.  Now, that particular count,

17    Mr. Sharma, that you are charged with carries with it

18    certain maximum penalties, and I want to make sure you

19    understand those.

20          And, Mr. Sharma, at this time if you could please

21    turn to page 8 of the plea agreement.

22          And under the section in paragraph 5, do you

23    understand that the wire fraud count of 18 United States

24    Code 1343 carries the following maximum statutory penalties:

25    Specifically, 20 years in prison, a supervised release term

1    of 3 years, a fine of $250,000 or twice the gross gain or

2    loss from the offense, whichever is greater, a mandatory

3    special assessment of $100, as well as payment of mandatory

4    restitution in an amount that will be determined by the

5    court?  Do you understand that those are the maximum

6    penalties that you could face under law?

7            THE DEFENDANT:  Yes.

8            MR. EBERT:  Okay.  Next, Mr. Sharma, I want to

9    direct your attention to some of the provisions that are set

10   forth in the plea agreement beginning on page 12.  And these

11   concern your important rights, including your important

12   constitutional rights, Mr. Sharma, and I want to make sure

13   that you clearly understand them.

14           So, first of all, do you understand that you have

15   a right to be charged by an indictment rather than by an

16   information?

17           THE DEFENDANT:  Yes.

18           MR. EBERT:  Okay.  And that as a part of that

19   right, if you were to be charged by an indictment, that

20   would mean that there's what's called a grand jury, which is

21   similar to a trial jury in that they are hearing evidence,

22   but their function is not to determine guilt or innocence,

23   but, rather, it's to determine whether there's probable

24   cause for charges to be brought.  And so do you understand

25   that that's your right to have the concurrence of 12 or more

1    members of the grand jury, for them to find that there's

2    probable cause for charges to be filed?

3                    THE DEFENDANT:  Yes.

4                    MR. EBERT:  However, by signing this plea

5    agreement, you're agreeing to sign an indictment waiver and

6    that you are knowingly waiving your right to be prosecuted

7    by an indictment in this case?

8                    THE DEFENDANT:  Yes.

9                    MR. EBERT:  And you're also waiving your right to

10   assert at a trial or on appeal any defects that might arise

11   from the information that's at Document 43 in this case, as

12   well as any defects in the information process, or waiving

13   the fact that you've been prosecuted by way of an

14   information in this case.  Do you understand those rights?

15                   THE DEFENDANT:  Yes.

16                   MR. EBERT:  Similarly, you also have the right to

17   file certain types of pretrial motions in this case.  For

18   example, you have the ability as a defendant charged in

19   federal court to file motions to suppress evidence or to

20   challenge certain things about the government's case.

21   However, you're giving up that right to file certain

22   pretrial motions and that you're agreeing not to pursue any

23   motions that may have been filed with your entry of this

24   plea agreement today?

25                   THE DEFENDANT:  Yes.  And for this case, yes.

```
 1              MR. EBERT:  And next I want to touch upon some of

 2      your important trial rights.  First of all, do you

 3      understand that you have a right to plead not guilty?  Do

 4      you understand that right?

 5              THE DEFENDANT:  Yes.

 6              MR. EBERT:  And that you have a right to persist

 7      forward with a not guilty plea?

 8              THE DEFENDANT:  Yes.

 9              MR. EBERT:  You also have a right to what's called

10      a speedy trial.  Are you aware of that right?

11              THE DEFENDANT:  Yes.

12              MR. EBERT:  That within a set amount of time you

13      would have the right to a trial, likely to occur in this

14      courtroom, and seated to your left would be a jury of 12

15      people.  Do you understand?

16              THE DEFENDANT:  Yes.

17              MR. EBERT:  And that those 12 jurors would be

18      selected and they must unanimously agree that you would be

19      guilty in order for you to be convicted.  Do you understand

20      that right?

21              THE DEFENDANT:  Yes.

22              MR. EBERT:  An additional trial right, Mr. Sharma,

23      is that you have the right to assistance from your attorneys

24      at trial.  Do you understand?

25              THE DEFENDANT:  Yes.
```

1          MR. EBERT:  And that if you couldn't afford an

2     attorney at trial, that counsel would be appointed for you.

3     Are you aware of that right?

4          THE DEFENDANT:  Yes.

5          MR. EBERT:  You also have the right, Mr. Sharma,

6     to be presumed innocent until proven guilty.  Are you aware?

7          THE DEFENDANT:  Yes.

8          MR. EBERT:  And that the burden rests upon the

9     government, that the government must prove its case beyond a

10    reasonable doubt against you.  Do you understand that right?

11         THE DEFENDANT:  Yes.

12         MR. EBERT:  And that as part of any trial,

13    Mr. Sharma, you would have the right to confront witnesses

14    and to cross-examine any witnesses who would be testifying

15    against you.

16         THE DEFENDANT:  Yes.

17         MR. EBERT:  You are aware of that right?

18         THE DEFENDANT:  Yes.

19         MR. EBERT:  You would also have the ability to

20    subpoena certain parties, if you so choose, to have those

21    parties come to trial on your behalf.  Do you understand?

22         THE DEFENDANT:  Yes.

23         MR. EBERT:  And as I stated a moment ago, you

24    would have certain rights to challenge through pretrial

25    motions, but in addition you would also have the rights to

1   challenge certain evidence in the course of trial, including

2   through making certain objections.  Do you understand?

3             THE DEFENDANT:  Yes.

4             MR. EBERT:  You would also have the right to

5   appeal any particular rulings by the court on some of those

6   issues that arose in trial.  Do you understand?

7             THE DEFENDANT:  Yes.

8             MR. EBERT:  You would also have the right to

9   testify on your own behalf, if you so choose.  Do you

10  understand?

11            THE DEFENDANT:  Yes.

12            MR. EBERT:  However, you would also have the right

13  not to be compelled to testify.  Do you understand?

14            THE DEFENDANT:  Yes.

15            MR. EBERT:  Specifically, not compelled to perhaps

16  incriminate yourself.  Do you understand that right?

17            THE DEFENDANT:  Yes.

18            MR. EBERT:  And if you chose not to testify, the

19  government could not make any comment in the courtroom to

20  the jury about the fact that you did not testify.  Do you

21  understand that?

22            THE DEFENDANT:  Yes.

23            MR. EBERT:  However, despite all of these trial

24  rights that we're discussing now, do you understand that

25  with an entry of a guilty plea today through this plea

1    agreement there would be no trial for you in this matter of

2    any kind if the court were to accept this plea agreement?

3                 THE DEFENDANT:  Yes.

4                 MR. EBERT:  And that there's no right to appeal

5    the plea, subject to certain exceptions that we're going to

6    talk about in a moment?

7                 THE DEFENDANT:  Yes.

8                 MR. EBERT:  Do you understand that?

9                 THE DEFENDANT:  Yes.

10                MR. EBERT:  So with respect to all of these rights

11   that we've just discussed concerning pretrial motions,

12   proceeding by information and all of your various trial

13   rights, you've indicated that you understand all of those

14   rights; is that correct?

15                THE DEFENDANT:  That's correct.

16                MR. EBERT:  And is it correct that you are today

17   voluntarily waiving those various rights?

18                THE DEFENDANT:  Yes.

19                MR. EBERT:  Okay.  Now, Mr. Sharma, I want to

20   direct your attention to page 13 of the plea agreement and

21   specifically to paragraph 15.  This paragraph, Mr. Sharma,

22   talks again about some of your rights, but this is in more

23   detail about your rights with respect to filing any type of

24   appeal in this matter.

25                THE DEFENDANT:  Yes.

1      MR. EBERT:  Do you understand that generally a

2   defendant, such as yourself, has the ability to appeal an

3   issue in their criminal case, such as a conviction or a

4   sentence?

5      THE DEFENDANT:  Yes.

6      MR. EBERT:  However, as part of this plea

7   agreement, despite that right, in exchange for other

8   concessions that are being made by the government, you are

9   waiving certain appellate rights.  Do you understand that?

10      THE DEFENDANT:  Yes.

11      MR. EBERT:  Specifically, you are waiving the

12   right to appeal the sentence unless the court imposes a

13   sentence of imprisonment that exceeds 78 months.  Do you

14   understand?

15      THE DEFENDANT:  Yes.

16      MR. EBERT:  And that includes the amount of

17   restitution.  Do you understand?

18      THE DEFENDANT:  Yes.

19      MR. EBERT:  And that, on the other side, the

20   United States is waiving its right to appeal any sentence of

21   imprisonment that the court may impose so long as the

22   sentence of imprisonment is 41 months or more.  Do you

23   understand?

24      THE DEFENDANT:  Yes.

25      MR. EBERT:  Next, this paragraph talks about

1    certain areas where a defendant could try to what's called

2    collaterally attack their conviction or their sentence, in

3    other words, Mr. Sharma, by appealing to an appellate court

4    on the basis that the conviction or something about the case

5    was somehow unlawful.  However, here as part of this plea,

6    do you understand that you are waiving your right to that

7    type of postconviction collateral attack or direct appeal?

8    Do you understand that?

9              THE DEFENDANT:  Yes.

10             MR. EBERT:  However, you still retain the ability

11   to file such relief on appeal concerning any claim of

12   ineffective assistance of counsel.  Do you understand?

13             THE DEFENDANT:  Yes.

14             MR. EBERT:  And all of these various appellate

15   rights, have you had the opportunity to discuss these with

16   your attorney?

17             THE DEFENDANT:  Yes.

18             MR. EBERT:  And are you today knowingly and of

19   your own volition waiving those appellate rights?

20             THE DEFENDANT:  Yes.

21             MR. EBERT:  All right.  Next, Mr. Sharma, I want

22   to direct your attention to the portion of the plea

23   agreement that begins at the very bottom of page 8.  And

24   this concerns the discussion, Mr. Sharma, of what the

25   parties estimate may be your advisory guidelines range at

1     sentencing in this case.

2                     THE DEFENDANT:  Yes.

3                     MR. EBERT:  And so, first, do you understand that

4     this plea agreement, including the various anticipated

5     advisory guidelines ranges that we'll discuss in a moment,

6     that all of this is an agreement between the two parties and

7     not the court?

8                     THE DEFENDANT:  Yes.

9                     MR. EBERT:  In other words, the court is not bound

10    by what the parties understand the guidelines range to be

11    for potential punishment for you.  Do you understand?

12                    THE DEFENDANT:  Yes.

13                    MR. EBERT:  Rather, the court will consider a

14    range of factors, but is not tied or obligated to follow

15    what the parties understand to be the range.  Do you

16    understand that?

17                    THE DEFENDANT:  Yes.

18                    MR. EBERT:  That being said, I just do want to

19    point out and make sure you understand what the parties

20    believe today to be the range for you.  So beginning on

21    page 9, Mr. Sharma, in terms of calculating your sentence

22    under the advisory sentencing guidelines, do you understand

23    that the parties agree that your base offense level is a 7?

24                    THE DEFENDANT:  Yes.

25                    MR. EBERT:  And that with respect to the amount of

1    loss, the government believes that the offense level should

2    be increased by 20 levels because the intended loss of

3    approximately $9.6 million is greater than 9.5 million, but

4    not more than 25 million.  Do you understand that that is

5    the government's position with respect to loss?

6              THE DEFENDANT:  Yes.

7              MR. EBERT:  However, under this plea agreement, do

8    you understand that you are reserving the right to argue at

9    sentencing for a lower loss level of 16 levels?  Are you

10   aware of that?

11             THE DEFENDANT:  Yes.

12             MR. EBERT:  And that, next, the parties both agree

13   that the offense level should be increased by 2 levels

14   because the offense involved a concept that's known as

15   "sophisticated means."  Do you understand that?

16             THE DEFENDANT:  Yes.

17             MR. EBERT:  Next, the government agrees that it

18   will recommend that you receive a 2-level reduction for

19   acceptance of responsibility; and provided that certain

20   other things occur set forth in subparagraph (d), the

21   government anticipates that it's going to file for an

22   additional 1-level reduction for you.  Do you understand

23   that?

24             THE DEFENDANT:  Yes.

25             MR. EBERT:  However, I want to emphasize that the

1    government will move for that additional 1-level reduction

2    provided that those conditions are met in subparagraph (d),

3    namely, that you testify truthfully today and at any

4    subsequent sentencing hearings; two, that you cooperate

5    fully with the United States Probation Office as it puts

6    together its presentence investigation; and, three, that you

7    engage in no conduct inconsistent with acceptance of

8    responsibility before the time of sentencing.  Do you

9    understand that?

10                   THE DEFENDANT:  Yes.

11                   MR. EBERT:  With respect to your criminal history

12   category, at this time do you understand that the parties

13   agree that you're in the lowest category, which is

14   category I?

15                   THE DEFENDANT:  Yes.

16                   MR. EBERT:  That that assessment is simply the

17   parties' understanding.  It does not constitute a formal

18   stipulation and not anything that binds the court.  Do you

19   understand?

20                   THE DEFENDANT:  Yes.

21                   MR. EBERT:  So, for example, the probation office

22   will conduct a thorough review of all of the information

23   about the case and about you; and if they should uncover

24   something that's not known today to the parties, that could

25   cause you to be in a higher criminal history category.  Do

1    you understand?

2              THE DEFENDANT:  Yes.

3              MR. EBERT:  And that if that should occur, that

4    you are in a higher category, you're going to be sentenced

5    based on that higher and more accurate category and you

6    would not be able to withdraw from this plea agreement.  Do

7    you understand?

8              THE DEFENDANT:  Yes.

9              MR. EBERT:  And so with those anticipated figures

10   in mind, with an adjusted offense level of 26 and a criminal

11   history category of I, the government anticipates that your

12   advisory range would be 63 to 78 months of imprisonment.  Do

13   you understand that?

14             THE DEFENDANT:  Yes.

15             MR. EBERT:  Whereas, the defense's position is

16   that the advisory range of imprisonment is 41 to 51 months

17   of imprisonment.  Do you understand?

18             THE DEFENDANT:  Yes.

19             MR. EBERT:  And that, in addition, you could face

20   a fine as set forth in subparagraph (g).  Are you aware of

21   that?

22             THE DEFENDANT:  Yes.

23             MR. EBERT:  As well as any term of supervised

24   release, as well as restitution that would be imposed as

25   part of your sentence.  Are you aware of that as well?

1            THE DEFENDANT:  Yes.

2            MR. EBERT:  And next, Mr. Sharma, I want to jump

3    to paragraph 11, which is on page 12.  And I mentioned that

4    a component of your sentence could be up to 3 years of

5    supervised release.  And that's where if you are sentenced

6    to a term of imprisonment, then after that prison term you

7    could be on what's called pretrial -- or excuse me -- on

8    supervised release where you may be subject to certain types

9    of conditions and monitoring.  Do you understand that?

10            THE DEFENDANT:  Yes.

11            MR. EBERT:  And do you understand that if you were

12   to violate any of those supervised release conditions, that

13   you could be sentenced to some form of punishment, which

14   could include an additional term of imprisonment up to the

15   length of the original supervised release term?  Do you

16   understand that?

17            THE DEFENDANT:  Yes.

18            MR. EBERT:  All right.  Next, Mr. Sharma, I want

19   to take a moment and touch upon restitution, as well as

20   forfeiture.

21            First, on page 11, paragraph 9, do you understand

22   that you're obligated by law to pay restitution to the

23   victims of this particular offense?

24            THE DEFENDANT:  Yes.

25            MR. EBERT:  And that specifically you are agreeing

1    with the government that the amount of restitution that's

2    owed to the victim lenders is at least $1,773,600?

3              THE DEFENDANT:  Yes.

4              MR. EBERT:  And paragraph 10 set forth -- the

5    provisions in paragraph 10 set forth various things that you

6    are agreeing you will do to comply with disclosure of any

7    assets.  Have you had an opportunity to go through that

8    paragraph?

9              THE DEFENDANT:  Yes.

10             MR. EBERT:  And so that being said, do you agree

11   that you will fully and completely disclose to the United

12   States Attorney's Office the existence and location of any

13   assets in which you have any right, title or interest --

14             THE DEFENDANT:  Yes.

15             MR. EBERT:  -- or over which you exercise control,

16   directly or indirectly, including any assets held by a

17   spouse, a nominee or other third party or any businesses

18   that are controlled by you?

19             THE DEFENDANT:  Yes.

20             MR. EBERT:  And do you agree to assist the United

21   States in identifying, locating, returning and transferring

22   assets for use in payment of restitution and of any fines

23   that might be ordered by the court?

24             THE DEFENDANT:  Yes.

25             MR. EBERT:  In particular, two weeks after the

1       change of plea hearing today, do you agree to provide to the

2       United States under penalty of perjury a financial

3       disclosure form that lists all of your assets and financial

4       interests valued at more than $1,000 before the date of

5       sentencing?

6               THE DEFENDANT:  Yes.

7               MR. EBERT:  And do you agree to provide updates

8       with any material or significant changes in your

9       circumstances --

10              THE DEFENDANT:  Yes.

11              MR. EBERT:  -- that might occur prior to

12      sentencing and within seven days of the event giving rise to

13      those changed circumstances?  Do you agree to do that?

14              THE DEFENDANT:  Yes.

15              MR. EBERT:  Do you further agree to execute any

16      releases that may be necessary for the United States to

17      obtain information concerning your assets?

18              THE DEFENDANT:  Yes.

19              MR. EBERT:  And do you expressly authorize the

20      United States to obtain a credit report on you to evaluate

21      your ability to satisfy any financial obligations that might

22      be imposed by the court?

23              THE DEFENDANT:  Yes.

24              MR. EBERT:  And if requested by the United States,

25      do you agree to submit to one or more asset interviews or

1    depositions under oath?

2               THE DEFENDANT:  Yes.

3               MR. EBERT:  Next, Mr. Sharma, I want to direct

4    your attention to page 14 and the paragraph that begins

5    on 16.

6               With this plea agreement, are you agreeing to

7    forfeit to the United States certain property, real or

8    personal, that constitutes or is derived from proceeds that

9    are traceable to the wire fraud scheme that you are charged

10   with in Count 1 of the information?

11              THE DEFENDANT:  Yes.

12              MR. EBERT:  And directing your attention to

13   paragraph 17, do you agree that the specific property that

14   you are agreeing will be forfeited is specifically $331,300

15   in funds seized from an Old National Bank account in the

16   name of Mokume, LLC --

17              THE DEFENDANT:  Yes.

18              MR. EBERT:  -- as well as $245,138.49 seized from

19   a Wells Fargo Bank in the name of Kloudgaze --

20              THE DEFENDANT:  Yes.

21              MR. EBERT:  -- as well as $85,594.94 seized from

22   an Old National Bank account in the name of Kloudgaze as

23   well --

24              THE DEFENDANT:  Yes.

25              MR. EBERT:  -- and finally $12,947.33 seized from

1       a U.S. Bank account in your name?  Do you understand?

2                   THE DEFENDANT:  Yes.

3                   MR. EBERT:  And for purposes of today, I'll refer

4       to those four bank accounts as the seized funds.  Do you

5       understand?

6                   THE DEFENDANT:  Yes.

7                   MR. EBERT:  And so do you admit today that those

8       seized funds are subject to forfeiture --

9                   THE DEFENDANT:  Yes.

10                  MR. EBERT:  -- because they are traceable to the

11      wire fraud scheme?

12                  THE DEFENDANT:  Yes.

13                  MR. EBERT:  And are you also agreeing to the entry

14      of a forfeiture money judgment in the amount of $1,773,600

15      as well, Mr. Sharma?

16                  THE DEFENDANT:  Yes.

17                  MR. EBERT:  Because you agree that the amount of

18      proceeds you obtained is equal to that amount; is that

19      correct?

20                  THE DEFENDANT:  Yes.

21                  MR. EBERT:  And then moving on to paragraphs on

22      page 15, do you understand that the United States reserves

23      the right to, as I said, seek a forfeiture money judgment,

24      as well as to forfeit substitute assets and to forfeit any

25      additional directly forfeitable property?

1           THE DEFENDANT:  Yes.

2           MR. EBERT:  But that you will receive a credit

3     against this money judgment for the net value of all assets

4     that are forfeited from you in connection with this matter.

5     Do you understand?

6           THE DEFENDANT:  Yes.

7           MR. EBERT:  And are you also agreeing that the

8     United States may, at its option, forfeit these seized funds

9     through either civil, criminal or administrative

10    proceedings?

11          THE DEFENDANT:  Yes.

12          MR. EBERT:  And are you waiving any deadline or

13    statute of limitations for the initiation of any court

14    proceedings or other proceedings as well?

15          THE DEFENDANT:  Yes.

16          MR. EBERT:  And are you also abandoning any

17    interest that you might have in those seized funds?

18          THE DEFENDANT:  Yes.

19          MR. EBERT:  Are you also giving up any

20    constitutional defenses or statutory defenses to the

21    forfeiture of the seized funds?

22          THE DEFENDANT:  Yes.

23          MR. EBERT:  Are you also waiving any right to

24    contest or challenge such forfeiture on any grounds, which

25    includes through a direct appeal or through any other means?

1          THE DEFENDANT:  Yes.

2          MR. EBERT:  To the extent that you have filed any

3    sort of claim or sought any type of relief concerning the

4    property to challenge it, are you agreeing to withdraw any

5    such challenge?

6          THE DEFENDANT:  Yes.

7          MR. EBERT:  Do you also agree that you won't

8    assist any third parties to the extent any third parties

9    might make a claim or a petition concerning the seized

10   funds?

11         THE DEFENDANT:  Yes.

12         MR. EBERT:  And, lastly, with respect to this

13   forfeiture issue, do you understand that the forfeiture of

14   the seized funds shall not be treated as satisfaction of any

15   fine, restitution, costs of imprisonment or any other

16   financial penalty that the court may impose upon you in

17   addition to the forfeiture judgment?

18         THE DEFENDANT:  Yes.

19         MR. EBERT:  Despite that, in this case the United

20   States Attorney's Office for the District of Minnesota is

21   agreeing with this plea agreement to take the appropriate

22   steps to recommend to a different component within the

23   United States Department of Justice that the net proceeds

24   that are derived from any forfeited assets be applied to

25   your restitution judgment, pursuant to law.  Do you

1   understand that?

2               THE DEFENDANT:  Yes.

3               MR. EBERT:  But do you also understand and

4   acknowledge that the U.S. Attorney's Office in Minnesota

5   only has the authority to recommend that type of relief --

6               THE DEFENDANT:  Yes.

7               MR. EBERT:  -- to this other component within the

8   Department of Justice?

9               THE DEFENDANT:  Yes.

10              MR. EBERT:  And that ultimately any final decision

11  about whether or not to apply forfeited seized funds towards

12  restitution, that that decision rests with the Chief of this

13  Money Laundering and Asset Recovery Section with the U.S.

14  Department of Justice.  Do you understand?

15              THE DEFENDANT:  Yes.

16              MR. EBERT:  And it's that entity that makes the

17  final decision in accordance with applicable law and that

18  any recommendation from me or from my office here in

19  Minnesota does not guarantee that any seized forfeited funds

20  will be applied towards your restitution.  Do you

21  understand?

22              THE DEFENDANT:  Yes.

23              MR. EBERT:  In order for the court to find,

24  Mr. Sharma, that there's a basis for you to enter a plea of

25  guilty, it needs to find that there's a sufficient factual

1       basis to support that charge.  And so to that end, I want to

2       direct your attention, Mr. Sharma, to the factual basis that

3       begins on paragraph -- or excuse me -- on page 2.

4                   And, Mr. Sharma, in large part, I'm going to

5       follow along with the provisions in the plea, and I will

6       summarize at certain points.  Okay?

7                   THE DEFENDANT:  Yep.

8                   MR. EBERT:  So, first, from at least April of 2020

9       through at least in or around November 2020, in the District

10      of Minnesota, did you knowingly and intentionally devise and

11      execute a scheme to defraud by supplying false information

12      and otherwise engaging in fraudulent pretenses,

13      representations and promises and by concealing certain

14      material facts?

15                  THE DEFENDANT:  Yes.

16                  MR. EBERT:  And, specifically, did that scheme to

17      defraud entail applying for a certain type of COVID-19

18      pandemic relief money by submitting loan applications that

19      contained false and fraudulent information?

20                  THE DEFENDANT:  Yes.

21                  MR. EBERT:  And that as a result, did you

22      fraudulently apply for at least $9,619,046 in such loans

23      from at least ten different lenders, even though you knew

24      you were not entitled to receive such funds?

25                  THE DEFENDANT:  Yes.

1          MR. EBERT:  And that as a result of that scheme,

2     did you actually obtain $1,773,600 in fraudulent proceeds?

3          THE DEFENDANT:  Yes.

4          MR. EBERT:  During this scheme did you reside in

5     Maple Grove here in Minnesota?

6          THE DEFENDANT:  Yes.

7          MR. EBERT:  And was Crosscode a cloud-based

8     software development company that was originally

9     headquartered in Maple Grove, Minnesota?

10          THE DEFENDANT:  Yes.

11          MR. EBERT:  And did you found that company in or

12     about 2015?

13          THE DEFENDANT:  Yes.

14          MR. EBERT:  And did you hold various positions at

15     Crosscode --

16          THE DEFENDANT:  Yes.

17          MR. EBERT:  -- including -- including chief

18     executive officer and president?

19          THE DEFENDANT:  Yes.

20          MR. EBERT:  And on or about November 13th, 2019,

21     were you notified of your effective termination by Crosscode

22     and your removal from the company?

23          THE DEFENDANT:  Yes.

24          MR. EBERT:  And at that date did you know that you

25     were not the 100 percent shareholder of Crosscode shares?

1              THE DEFENDANT:  Yes.

2              MR. EBERT:  Next, Kloudgaze, Inc., or Kloudgaze.

3    Was that a company that was set up to design cloud computing

4    technology?

5              THE DEFENDANT:  Yes.

6              MR. EBERT:  And did you create and register that

7    in Delaware on or about May 18th of 2020?

8              THE DEFENDANT:  It was registered, yes, on that

9    date, but created much before.

10             MR. EBERT:  Okay.  But so it was created

11   previously and you registered it on --

12             THE DEFENDANT:  Yes.

13             MR. EBERT:  -- May 18th --

14             THE DEFENDANT:  Yes.

15             MR. EBERT:  -- of 2020?  And you were that

16   entity's president and chief executive officer; is that

17   correct?

18             THE DEFENDANT:  Yes.

19             MR. EBERT:  And through at least July of 2020 you

20   did not report the payment of any wages to a Kloudgaze

21   employee; is that correct?

22             THE DEFENDANT:  That might be inaccurate.  I will

23   have to double-check the exact date, but --

24             MR. EBERT:  Well, as we will discuss in a moment,

25   did you make certain representations about the number of

1    Kloudgaze employees on certain applications to get PPP

2    money?

3              THE DEFENDANT:  Yes.

4              MR. EBERT:  And did the number of employees that

5    you listed on those applications contain information that

6    was not true and that was not accurate with respect to the

7    number of Kloudgaze employees?

8              THE DEFENDANT:  Yes.

9              MR. EBERT:  Okay.  And at no point did Crosscode,

10   the former company that you were at, do business under the

11   name of Kloudgaze; is that right?

12             THE DEFENDANT:  Yes.

13             MR. EBERT:  Next, Neoforma.  This was a company

14   that engaged in similar computer systems design and related

15   services; is that right?

16             THE DEFENDANT:  Yes.

17             MR. EBERT:  And you created that company; is that

18   correct?

19             THE DEFENDANT:  Yes.

20             MR. EBERT:  And it was registered in Minnesota on

21   or about July 8th, 2020?

22             THE DEFENDANT:  Yes.  Again, registered around

23   July 8, but, yeah, created much before.

24             MR. EBERT:  Okay.  And through at least August of

25   2020, is it correct that you did not report the payment of

1    any wages to a Neoforma employee?

2              THE DEFENDANT:  Yes.

3              MR. EBERT:  Okay.  Next, Mokume.  Was that a

4    company that did similar computer software services?

5              THE DEFENDANT:  Yes.

6              MR. EBERT:  And you created that; is that correct?

7              THE DEFENDANT:  Yes.

8              MR. EBERT:  And it was registered in Minnesota on

9    or about July 16th of 2020?

10             THE DEFENDANT:  Yes.

11             MR. EBERT:  With you as its president and chief

12   executive officer?

13             THE DEFENDANT:  Yes.

14             MR. EBERT:  And similar to the previous entity

15   Neoforma, there were not any employees for whom you reported

16   wages; is that correct?

17             THE DEFENDANT:  Yes.

18             MR. EBERT:  Moving on to page 4, Mr. Sharma.  In

19   general, do you agree that the United States Small Business

20   Administration is an agency within the U.S. Government that

21   provides support to entrepreneurs and to small businesses?

22             THE DEFENDANT:  Yes.

23             MR. EBERT:  And that as part of their mission,

24   they provide loans through private lenders to small

25   businesses?

```
1                    THE DEFENDANT:  Yes.

2                    MR. EBERT:  And that's done through

3       government-backed guarantees of those loans.  Do you

4       understand?

5                    THE DEFENDANT:  Yes.

6                    MR. EBERT:  In general, are you aware that the

7       so-called CARES Act enacted in March 2020 was to provide

8       various types of emergency financial assistance to Americans

9       dealing with struggles from the pandemic?

10                   THE DEFENDANT:  Yes.

11                   MR. EBERT:  And that as a component of the CARES

12      Act, there was a program to lend funds to qualifying small

13      businesses that was known as the Paycheck Protection Program

14      or the PPP.

15                   THE DEFENDANT:  Yes.

16                   MR. EBERT:  Do you understand?

17                   THE DEFENDANT:  Yes.

18                   MR. EBERT:  And that as set forth in greater

19      detail in the plea agreement, that in order to obtain a loan

20      a qualifying business had to do certain things as part of

21      their application and make certain certifications.  Do you

22      understand?

23                   THE DEFENDANT:  Yes.

24                   MR. EBERT:  Which included, among other things,

25      acknowledging the program rules and filling out what's
```

1       called an SBA Form 2483.  Do you understand?

2                   THE DEFENDANT:  Yes.

3                   MR. EBERT:  Among other things, that form and the

4       application required certifications that, for example, the

5       small business applicant was in operation on February 15th

6       of 2020 --

7                   THE DEFENDANT:  Yes.

8                   MR. EBERT:  -- as well as providing average

9       monthly payroll expenses and the number of employees.  Do

10      you agree with that?

11                  THE DEFENDANT:  Yes.

12                  MR. EBERT:  And that those figures we've just

13      talked about, that those were used to calculate the amount

14      of money that the small business was eligible to receive

15      under the PPP, correct?

16                  THE DEFENDANT:  Yes.

17                  MR. EBERT:  And that as part of that application,

18      the applicant was required to provide certain types of

19      supporting documentation showing their payroll expenses?

20                  THE DEFENDANT:  Yes.

21                  MR. EBERT:  And that once a PPP loan application

22      was processed and approved by a lender, then those disbursed

23      funds were guaranteed by the SBA.  Do you understand?

24                  THE DEFENDANT:  Yes.

25                  MR. EBERT:  And that these loan funds, as part of

1      the whole program, were to be used on certain types of

2      expenses, including payroll costs, the small business's

3      mortgage interest, rent and utilities; is that correct?

4                  THE DEFENDANT:  Yes.

5                  MR. EBERT:  Next I want to direct your attention

6      to some of the aspects of this scheme to defraud.   In

7      general, do you agree that between April 2020 and August of

8      2020 that you knowingly applied for PPP loans by submitting

9      loans that contained false and inaccurate information?

10                 THE DEFENDANT:  Yes.

11                 MR. EBERT:  And that the purpose of this scheme

12     was for you to either enrich yourself unjustly or your other

13     business by obtaining these PPP funds by providing false

14     information, fabricated supporting records, making false

15     statements about the number of employees that you had and

16     the amount of payroll expenses that you incurred, and by

17     otherwise making false statements about the relevant

18     corporate entities and the intended use of the loan

19     proceeds; is that correct?

20                 THE DEFENDANT:  Not to enrich myself.

21                 MR. EBERT:  Well, you agree with the provision in

22     the plea agreement that -- that an aspect of it was for you

23     to unjustly enrich other businesses of yours; is that

24     correct?

25                 THE DEFENDANT:  Again, I would have objections to

1    the term "unjustly enrich other businesses."  They were used

2    to create additional jobs, but I leave it to the legal

3    interpretation, yes.

4            MR. EBERT:  But in general, Mr. Sharma, you're

5    acknowledging today that you knowingly sought and applied

6    for certain funds by supplying various lenders with

7    information that just some of which was not truthful and was

8    incorrect?

9            THE DEFENDANT:  Yes, that is correct.

10           MR. EBERT:  And that as a result of that, certain

11   funds were disbursed to you based upon that false

12   information?

13           THE DEFENDANT:  That is correct.

14           MR. EBERT:  Okay.  And that as part of your -- as

15   part of your conduct with these loans, that you applied for

16   various loans, yet, as set forth in the middle of page 6, on

17   multiple instances when you submitted a subsequent

18   application, even though you may have already received PPP

19   money, you indicated that you, quote -- that the applicant,

20   quote, "has not and will not receive another loan under the

21   PPP program for the period of February 15, 2020, through

22   December 31, 2020."  Is that correct?

23           THE DEFENDANT:  Yes.

24           MR. EBERT:  And that, more specifically, between

25   April and July you submitted three applications that

1    contained falsehoods and misleading information, one for

2    Crosscode, Inc., doing business as Kloudgaze, one for

3    Kloudgaze and one for Mokume, which sought a total of

4    $1,773,600 in funds; is that correct?

5                   THE DEFENDANT:  Yes.

6                   MR. EBERT:  And that -- and that specifically to

7    carry that out, you did the conduct that we already

8    discussed about, which is the April 26th, 2020, wire

9    submission that's in Count 1 of the information; is that

10   correct?

11                  THE DEFENDANT:  Yes.

12                  MR. EBERT:  And that, among other things, do you

13   agree that your applications, as I said, concealed from

14   lenders that you had previously applied for or received

15   other PPP money?

16                  THE DEFENDANT:  Yes.

17                  MR. EBERT:  Okay.  For example, it didn't disclose

18   your receipt of a $474,900 loan for Kloudgaze on July 16th,

19   2020, when you thereafter applied for more funding; is that

20   correct?

21                  THE DEFENDANT:  Yes.

22                  MR. EBERT:  And as we talked about, the loan

23   applications had information that was false about the number

24   of active employees on payroll, as well as payroll figures;

25   is that correct?

```
 1                THE DEFENDANT:  Yes.

 2                MR. EBERT:  And that there were certain supporting

 3     documentation that was included in the applications from you

 4     that had been falsified, including bank account statements

 5     that were fabricated, for example; is that correct?

 6                THE DEFENDANT:  Yes.

 7                MR. EBERT:  And that as a direct result of these

 8     various fabricated documents and untrue information, do you

 9     agree that three lenders approved applications, which

10     resulted in the disbursement of $1,773,600 into bank

11     accounts that you either opened or controlled?

12                THE DEFENDANT:  Yes.

13                MR. EBERT:  And that thereafter you transferred

14     this money as need be to other bank accounts or used it for

15     other purposes; is that correct?

16                THE DEFENDANT:  Only for business purposes, yes.

17                MR. EBERT:  And that you were the person who did

18     those things; is that correct?

19                THE DEFENDANT:  Yes.

20                MR. EBERT:  Okay.

21                THE DEFENDANT:  But, of course, other people had

22     access to the account as well, including certain employees

23     that charged financial -- the CPA and maybe a couple of

24     more.

25                MR. EBERT:  And so, among other things,
```

1    Mr. Sharma, you acknowledge that a portion of the funds that

2    you received were used for certain types of things that were

3    not authorized, including paying for home improvements,

4    including the installation of a pool in excess of $64,000 in

5    your backyard; is that correct?

6              THE DEFENDANT:  No, that is not factually correct.

7    So this was an accounting error.

8              MR. EBERT:  So --

9              THE DEFENDANT:  But none of the funds were used

10   for anything personal.  They were all used to create new

11   businesses and to create further employments.

12             MR. EBERT:  So you acknowledge that -- you

13   acknowledge in general, Mr. Sharma, that you've supplied

14   false information that resulted in the disbursement of these

15   funds; is that correct?

16             THE DEFENDANT:  That I agree, yes.

17             MR. EBERT:  And specifically in the elements that

18   are set forth in Count 1 of the information that we've

19   talked about a moment ago?

20             THE DEFENDANT:  Yes.

21             MR. EBERT:  Okay.  Unless Your Honor has any

22   further items that you'd like me to address, I believe I

23   would end there.

24             THE COURT:  Not at this time.  I'll ask some

25   questions.

1                    But, Mr. Garry, do you have any questions or

2        comments you'd like to put on the record at this point?

3                    MR. GARRY:  No, Your Honor.

4                    THE COURT:  All right.  Mr. Sharma, I'm going to

5        ask you some questions, some of which are going to be very

6        similar or the same, actually, as you've already been asked,

7        but I have my own purposes for that.

8                    The first question I always ask of someone in your

9        position is whether you're here voluntarily to plead guilty

10       this morning.  Are you?

11                   THE DEFENDANT:  Yes, Your Honor.

12                   THE COURT:  And in that sense has anyone forced

13       you to come here, coerced you, threatened you in any way,

14       caused you to come here against your own will to plead

15       guilty?

16                   THE DEFENDANT:  No, Your Honor.

17                   THE COURT:  On the other side of that, has anyone

18       made promises to you or anything, any enticement to get you

19       to come here to plead guilty, other than the promises in the

20       plea agreement?

21                   THE DEFENDANT:  No, Your Honor.

22                   THE COURT:  Now, by pleading guilty, you're going

23       to be giving up a lot of rights you would have if we had a

24       trial.  Do you understand that?

25                   THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And you understand we're not going to

2     have a trial, so you are not going to have those rights

3     afforded you.  Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And one of those rights is very

6     important, is the right to be presumed innocent until such

7     time as the government proves you guilty beyond a reasonable

8     doubt.  Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And if you plead guilty today, one of

11     the things that's going to happen is you will not be able to

12     unplead.  Do you understand that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And if you plead guilty and tonight

15     you are lying in bed and you say, oh, my goodness, I

16     shouldn't have done that, and you call Mr. Garry or any one

17     of the other attorneys you are using and say, I want to get

18     out of this deal, and they're going to tell you sorry, it's

19     almost impossible.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.  So I want you to think about it

22     just a little bit more before we get to the final question.

23          One of the things that I know is Mr. Garry's a

24     good attorney.  Has he been a good attorney for you?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Has he answered all of your questions?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Has he given you advice that you think

4   you are going to follow today?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Did you have enough time to talk to

7   him or the other attorneys you have?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And do you have any questions now of

10   your attorney?

11          THE DEFENDANT:  No, Your Honor.  I'll have a

12   conversation with Mr. Garry afterwards.

13          THE COURT:  Okay.  And do you have any questions

14   about the proceeding that you would like to ask the court?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Okay.

17          THE DEFENDANT:  Maybe just, you know, one

18   question.  By entering into this plea agreement, would I

19   still have my rights to press -- to bring charges against

20   several other criminals, against other individuals and

21   entities?

22          THE COURT:  Yes.  You are not giving up any of

23   those civil rights you have, no --

24          THE DEFENDANT:  Thank you, Your Honor.

25          THE COURT:  -- by doing this.

1              Did you also -- do you realize, of course, that

2      you -- if we had a trial, witnesses would be called against

3      you and you could confront them.  And what we mean by that

4      is you can look them in the eye when they are testifying,

5      and you can have your counsel cross-examine them on any

6      matter that's relevant.  Do you understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Okay.  And, likewise, you could

9      testify in your own behalf, if you wanted to, but no one

10     could force you to.  And as a matter of fact, the government

11     couldn't say, well, Mr. Sharma decided not to testify,

12     therefore he must be guilty.  Could not do that.  Do you

13     understand?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Okay.  Do you believe you are guilty

16     of the charges contained in the information?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Do you wish to still plead guilty to

19     that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  I'm going to ask you now, How do you

22     now plead?

23             THE DEFENDANT:  Guilty, Your Honor.

24             THE COURT:  I'm going to put this finding into the

25     record.  It is the finding of the court in the case of the

1  United States versus Aditya Raj Sharma that the defendant is

2  fully competent and capable of entering an informed plea

3  that is supported by an independent basis in fact containing

4  each of the essential elements of the offense, and his plea

5  is therefore conditionally accepted, and he is now adjudged

6  guilty of that offense.

7  Now, I said "conditionally accepted" because I'm

8  going to order that a presentence investigation be made.  We

9  have in the courtroom with us, who has been listening to

10  this proceeding, a probation officer.  And I want you to

11  check with her before you leave.

12  And, Mr. Garry, you also, if you have any -- if

13  you wish to be present during any of the interrogation, make

14  sure that fact is known to the probation officer.

15  When the investigation is completed, it will be

16  prepared in written form.  Your counsel will get a copy of

17  that, as will the government.  I will not until you've had a

18  chance to look at it and look it over and find out if it's

19  correct.  Make sure you read it, make sure that it is

20  correct, because I'm going to be relying on that report in

21  sentencing you.  Do you understand that?

22  THE DEFENDANT:  Yes, Your Honor.

23  THE COURT:  And I want to make sure it's correct.

24  After that's all happened, we'll have the -- we'll have you

25  come back here for sentencing.  Do you understand how it's

1  going to happen?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Okay.  I'm going to order the plea

4  agreement filed.

5          Is there anything concerning custody that the

6  government is interested in this morning?

7          MR. EBERT:  No, Your Honor.  I believe that the

8  current conditions can remain in place.

9          THE COURT:  Okay.  Mr. Sharma, you've been doing

10  the right thing since you've been initially charged.  You

11  were put on bond.  You were allowed to stay at liberty.  And

12  because you've done the right thing and because of the

13  government's motion, in effect what they just said, they

14  held out their hand to you, I'm not going to take you into

15  custody now.  I could possibly do that, but we're going to

16  continue you on your bond, continue you to follow all the

17  rules and the restrictions that are in that bond.  I don't

18  know what they are.  I don't have it in front of me.  But if

19  you have any question about it, make sure you talk to

20  Mr. Garry or one of the other lawyers and make sure you know

21  what you are doing.  Leaving the state, for example, is one

22  of those things that people do, not thinking, and all of a

23  sudden they are in big trouble.  And we don't want you to be

24  in big trouble, because if that happens, we'll have a

25  report, we'll have you back here, and we'll put you in jail.

```
1    Do you understand what the result is?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  Okay.  Is there anything else that

4    should come before the court this morning?

5                MR. GARRY:  Your Honor, may I have just one moment

6    to consult with Mr. Ebert?

7                THE COURT:  Sure, you may.  Go ahead.

8                     (Attorneys confer.)

9                MR. GARRY:  Thank you, Your Honor.

10               THE COURT:  So there's nothing else need come

11   before the court?

12               MR. EBERT:  Your Honor, I also have a copy that I

13   can tender that has the parties' signatures, including

14   Mr. Sharma's signature.

15               THE COURT:  Does that have the very -- very slight

16   little modification that was made this morning?

17               MR. EBERT:  That is correct, Your Honor.

18               THE COURT:  Okay.  And that was actually read into

19   the record correctly.  And so the court will accept that and

20   file that plea agreement.

21               MR. EBERT:  All right.  May I approach to hand

22   this up, Your Honor?

23               THE COURT:  You may.

24               And with that, the court is going to stand in

25   recess.
```

1          MR. EBERT:  Thank you.

2          MR. GARRY:  Thank you, Your Honor.

3          THE CLERK:  All rise.

4          THE DEFENDANT:  Thank you.

5      (Court adjourned at 11:14 a.m., 07-28-2021.)

6                        *   *   *

7      I, Renee A. Rogge, certify that the foregoing is a

8  correct transcript from the record of proceedings in the

9  above-entitled matter.

10                    Certified by:  /s/Renee A. Rogge
                                     Renee A. Rogge, RMR-CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25